UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

DION WILLIAMS,

                          Plaintiff,

    v.                                            **DECISION AND ORDER**
                                                          14-CV-947S

CAROLYN W. COLVIN,
Commissioner of Social Security,

                          Defendant.

1. Plaintiff Dion Williams challenges Administrative Law Judge Donald T. McDougall's ("ALJ") determination that he is not disabled within the meaning of the Social Security Act and therefore not entitled to disabled widower's benefits ("DWB") or disability insurance benefits ("DIB"). Plaintiff alleges that he has been disabled since his alleged onset date of February 14, 2003, due to his diagnoses of cervical and lumbosacral strain (Tr. at 232[1]); depressive disorder, NOS, and anxiety disorder, NOS (Tr. at 329); post-traumatic stress disorder ("PTSD"), chronic (Tr. 260, 323, 447); partial tear of the left shoulder rotator cuff (Tr. at 732); C4 through C7 disc bulge; L4 through L5 foraminal stenosis (Tr. 467, 1092); and greater occipital neuralgia, muscle spasm, and lumbar facet arthropathy (Tr. at 1277).

2. Plaintiff protectively filed an application for DWB and DIB on September 14, 2011, which was denied on January 19, 2012. (Tr. at 171, 100.) Plaintiff thereafter requested an administrative hearing. On March 22, 2013, the ALJ conducted an administrative hearing, at which Plaintiff testified. (Tr. at 43.) The ALJ subsequently denied Plaintiff's claim on June 13, 2013. (Tr. at 41-89, 12-40.) On July 13, 2013,

---

[1] Transcript references (Tr. at __) are to the transcript of the administrative record.

Plaintiff requested review of the hearing decision, which the Appeals Council later denied on September 22, 2014. (Tr. at 1-5.)

3. Plaintiff filed this action on November 10, 2014. (Docket No. 1.) On July 6, 2015, Plaintiff filed a Motion for Judgment on the Pleadings. (Docket No. 6.) On September 2, 2015, Defendant likewise filed a Motion for Judgment on the Pleadings. (Docket No. 8.) After full briefing, this Court reserved decision without oral argument.

4. A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, this Court may reverse a Commissioner's determination only if it is not supported by substantial evidence or is based upon legal error. Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998) (citing Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982)). Substantial evidence is that which amounts to "more than a mere scintilla," which the Supreme Court defines as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S. Ct. 206, 217, 83 L. Ed. 126 (1938)). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

5. "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides . . . includ[ing] that which detracts from its weight." Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). This Court must sustain the Commissioner's finding if supported by substantial evidence "even where substantial evidence may support the plaintiff's position and despite that the court's

independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). This Court must give the Commissioner's determination considerable deference and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

6. The Commissioner must use a five-step analysis to determine whether an individual is disabled as defined under the Act. See 20 C.F.R. §§ 404.1520, 416.920; Bowen v. Yuckert, 482 U.S. 137, 140-42, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987). This five-step process is detailed below:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d at 467 (per curiam) (quotations in original); see also 20 C.F.R. § 404.1520; Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).

7. The claimant has the burden to prove the first four steps and the Commissioner has the burden to prove the fifth step. See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). In the fifth step, the

Commissioner must first assess the claimant's job qualifications by considering his physical ability, age, education, and work experience, then determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

8. In this case, the ALJ made the following findings regarding the five steps: (1) Plaintiff did not engage in substantial gainful activity since February 14, 2003; (2) Plaintiff's full thickness left rotator cuff lesion, status post-surgery; lumbar facet arthropathy; disc bulges in the cervical spine; PTSD; and depressive disorder were severe impairments; (3) Plaintiff's impairments did not meet or equal the severity of any listed impairments; (4) Plaintiff is unable to perform his past relevant work; and (5) Plaintiff could perform other jobs in the economy based on his age, education, work experience, and residual functional capacity. (Tr. at 17, 18, 31, 32.)

9. Plaintiff claims that the ALJ misapplied the treating-physician rule when he afforded Plaintiff's four treating physicians—Dr. Alfonso Tan, Dr. Pamela Hughes, Dr. Michael Grant, and Dr. Anthony Morgante—less than controlling or great weight. Defendant argues that the ALJ properly considered all of the medical evidence, including Plaintiff's treating physicians' opinions.

10. Plaintiff first claims that the ALJ erred when he afforded Dr. Tan less than controlling or great weight. Dr. Tan is a specialist in psychiatry, saw Plaintiff monthly, and provided psychiatric evaluations for Plaintiff as his treating physician. (Tr. at 407-08, 441, 1268-1892.) Dr. Tan diagnosed Plaintiff with PTSD, depressive disorder NOS, bipolar disorder, dysthymia, and noted that he feared heights. (Tr. at 393, 408, 444.)

Between 2010 and 2013, Dr. Tan noted that Plaintiff's Global Assessment of Functioning ("GAF") scores ranged from 55 to 75, most commonly falling at 65. (Tr. at 390-405.) Dr. Tan stated that Plaintiff is permanently disabled since 2003. (Tr. 445.) The ALJ considered and discussed Dr. Tan's opinion, but afforded it little weight because it was inconsistent with Dr. Tan's own office notes and Plaintiff's GAF scores. (Tr. at 30.)

11. The treating-physician rule requires that an ALJ give the medical opinion of a claimant's treating physician "controlling weight if it is well supported by medical findings and not inconsistent with other substantial record evidence." Shaw v. Chater, 221 F.3d 126, 134 (2d Cir. 2000); see 20 C.F.R. § 404.1527(c)(2). The "less consistent [a treating physician's] opinion is with the record as a whole, the less weight it will be given." Snell v. Apfel, 177 F.3d 128, 132 (2d Cir. 1999). The ALJ must give "good reasons" for giving a treating physician's medical opinion less than controlling weight, and failure to do so is a ground for remand. See 20 C.F.R. § 404.1527(c)(2); Halloran v. Barnhart, 362 F.3d 28, 33 (2d Cir. 2004). When the ALJ does not give a treating physician's medical opinion controlling weight, he must explain how he weighed the factors in 20 C.F.R. § 404.1527(c). Reyes v. Barnhart, 226 F. Supp. 2d 523, 529 (S.D.N.Y. 2002).

12. "In evaluating opinion evidence, an ALJ may properly consider, among other information, whether a treating source's opinion is consistent with the GAF scores assessed by that treating source." Garcia v. Colvin, No. 13-CV-6433P, 2015 WL 1280620, at *7 (W.D.N.Y. Mar. 20, 2015); see, e.g., Thomas v. Astrue, No. 08 Civ. 8444(PGG), 2010 WL 1388997, *13 (S.D.N.Y. 2010). An ALJ may not rely on any test

5

score alone in making a decision on the extent of a claimant's limitation. Camille v. Colvin, 104 F. Supp. 3d 329, 342 (W.D.N.Y. 2015), aff'd, 652 F. App'x 25 (2d Cir. 2016).

13. Plaintiff argues that the ALJ should have given Dr. Tan's opinion controlling weight because he was Plaintiff's treating physician. Alternatively, Plaintiff argues that the ALJ should have given Dr. Tan's opinion great weight under the factors in 20 C.F.R. § 404.1527, because he had a treatment relationship with Plaintiff, saw Plaintiff monthly, his opinion is consistent with the record and other providers' opinions, and he is a specialist in psychiatry. (Tr. at 441, 1268-1892.) Plaintiff further argues that Dr. Tan's opinion is consistent with the record, in part because GAF scores are not useful in assessing his residual functional capacity ("RFC") and are no longer used by the Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition. See Corporan v. Comm'r of Soc. Sec., No. C10–5103, 2011 WL 321832, at *22 n. 9 (S.D.N.Y. Jan. 23, 2015).

14. In response, Defendant argues that the ALJ reasonably gave Dr. Tan's opinion less than controlling weight, because Dr. Tan's notes were inconsistent with his opinion. Defendant further argues that Dr. Tan's GAF findings indicated at worst, mild limitations, which is inconsistent with his determination that Plaintiff had significant limitations and was unable to work. (Tr. at 30.)

15. In this Court's view, substantial evidence supports the ALJ's decision to give Dr. Tan's opinion little weight. On February 15, 2013, Dr. Tan concluded that Plaintiff had been permanently disabled since 2003, and was unable to work because he had anxiety related to heights. (Tr. at 394, 445.) Dr. Tan also concluded that Plaintiff was seriously limited in his ability to travel to new places, use public

transportation, complete a normal work schedule without interruption, perform at a consistent pace, and interact with coworkers and supervisors. (Tr. at 443-45.)

16. But after Dr. Tan diagnosed Plaintiff with PTSD, depressive disorder NOS, and bipolar disorder on February 25, 2010, his office notes from 2011 to 2012 reflect that Plaintiff's mood was "getting better," that he was "doing better," and that he was "keeping [him]self busy." (Tr. at 391, 403, 405.) Dr. Tan's objective evaluation indicated that Plaintiff's affect was appropriate; his speech was normal; his thought process was organized; his memory, concentration, and attention were good; his orientation was alert; and his judgment and insight were good. (Tr. at 390-405, 438-39.) These findings remained unchanged throughout Plaintiff's appointments, except for Plaintiff's mood, which Dr. Tan rated as euthymic 11 times, depressed six times, and elevated once. (Id.) Plaintiff's GAF scores ranged from 55 to 75, indicating some mild symptoms or some difficulty in social, occupational, or school functioning, but generally functioning pretty well, with some meaningful interpersonal relationships. (Tr. at 390-405, 438-39; see American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed., text revision 2000). Here, the ALJ did not err when he considered Plaintiff's GAF scores, because he considered the whole of Dr. Tan's office notes, not just Plaintiff's GAF scores, in finding that Dr. Tan's opinions were inconsistent with and unsupported by his treatment notes. (Tr. at 28.) Dr. Tan's subjective comments, objective evaluations, and assessment of Plaintiff's GAF scores are all inconsistent with his opinion that Plaintiff is permanently disabled and unable to work. The ALJ's decision to discount Dr. Tan's opinion is therefore supported by substantial evidence in the record.

17. Plaintiff's second claim is that the ALJ erred when he afforded Dr. Hughes less than controlling or great weight. Dr. Hughes is a specialist in psychology, saw Plaintiff weekly or biweekly for six months, and provided therapy for Plaintiff as his treating physician. (Tr. at 447, 450.) Dr. Hughes diagnosed Plaintiff with major depressive disorder, assessed Plaintiff's GAF score at 50, indicated Plaintiff had fear associated with heights, and opined that Plaintiff was unable to meet standards of work. (Tr. 452.) The ALJ gave Dr. Hughes' opinion little weight because her opinion did not correlate with the specific problems she identified and was inconsistent with Dr. Tan's office notes. (Tr. at 28-29, 30.)

18. Plaintiff argues that the ALJ should have given Dr. Hughes' opinion controlling weight because Dr. Hughes was Plaintiff's treating physician. Alternatively, Plaintiff argues that the ALJ should have given Dr. Hughes' opinion great weight under the factors in 20 C.F.R. § 404.1527 because she had a treatment relationship with Plaintiff, saw Plaintiff weekly or biweekly for six months, her opinion is consistent with the record and other providers' opinions, and she is a specialist in psychology. (Tr. at 447, 448.) Plaintiff further argues that Plaintiff's GAF scores reported by Dr. Tan are not inconsistent with Dr. Hughes' opinion because GAF scores are not useful in assessing his RFC.

19. In response, Defendant argues that the ALJ reasonably afforded Dr. Hughes' opinion less than controlling weight because her opinion is inconsistent with her office notes and with Dr. Tan's office notes. Defendant argues that Dr. Hughes' opinion that Plaintiff had significant limitations and was unable to work was inconsistent with her office notes because they indicated most of Plaintiff's problems involved

anxiety surrounding heights. (Tr. at 30, 447-48, 450-54.) Defendant further argues that Dr. Hughes' opinion was also inconsistent with Dr. Tan's assignment of GAF scores that indicated, at worst, only mild limitations. (Tr. at 30.)

20. In this Court's view, substantial evidence supports the ALJ's decision to give Dr. Hughes' opinion little weight. Dr. Hughes opined that Plaintiff is unable to meet competitive standards in his ability to understand and remember short and simple instructions; maintain attention for two-hour segments; maintain attendance; be punctual; complete a normal workday or workweek without interruptions from symptoms; perform at a consistent pace; and interact with co-workers. (Tr. at 452-53.) She opined that Plaintiff is seriously limited in his ability to accept instructions and respond appropriately to criticism. (Tr. at 453.) But when Dr. Hughes described the effects of Plaintiff's PTSD symptoms, she specified only that Plaintiff was limited in his ability to cross bridges, ride elevators, fly, and climb ladders more than five steps. (Tr. at 448.) Moreover, Dr. Hughes' opinion is inconsistent with Dr. Tan's opinion, which indicates that Plaintiff was "doing better," and showing good or appropriate functioning. (Tr. at 390-405, 438-39.) Dr. Tan also indicated that Plaintiff's aptitude for unskilled work was most commonly "limited but satisfactory" in a Mental Residual Functional Capacity Questionnaire ("MRFCQ") on February 15, 2013, unlike Dr. Hughes' MRFCQ on February 27, 2013, which indicates that Plaintiff was mostly "unable to meet competitive standards." (Tr. at 443-44, 453-54.) Thus, Dr. Hughes' description of Plaintiff's PTSD symptoms and Dr. Tan's office notes are both inconsistent with Dr. Hughes' opinion that Plaintiff is unable to meet standards of work. The ALJ's decision

to discount Dr. Hughes' opinion on this basis is therefore supported by substantial evidence in the record.

21. Plaintiff's third claim is that the ALJ erred when he afforded Dr. Grant's opinion less than great weight. Dr. Grant is a specialist in orthopedic surgery who examined Plaintiff and saw him for four years. (Tr. 1283-1309.) Dr. Grant opined that Plaintiff was totally disabled from work. (Tr. 1283-1309.) The ALJ found that Dr. Grant's opinion is not supported by the EMG and nerve conduction tests noted in his records. (Tr. at 29.)

22. Whether a claimant is "disabled" or "unable to work" is an issue reserved to the Commissioner, not a medical source. 20 C.F.R. § 404.1527(d)(1). Although the ALJ must consider opinions from medical sources on issues reserved to the Commissioner and apply the factors in 20 C.F.R. § 404.1527(d), the ALJ is not required to give controlling weight or special significance to these opinions. 20 C.F.R. § 404.1527(d)(2); Snell, 177 F.3d at 133; SSR 96-5P, 1996 WL 374183 at *2, *3 (July 2, 1996).

23. Plaintiff argues that the ALJ should have given Dr. Grant's opinion great, although not controlling, weight under the factors in 20 C.F.R. § 404.1527, because he was Plaintiff's treating physician, saw Plaintiff for four years, his opinion is consistent with the record and other providers' opinions, and he is a specialist in orthopedic surgery. (Tr. at 1283-1309.) Plaintiff further argues that the ALJ erred when he did not state what weight he afforded Dr. Grant's opinion and did not apply the factors in 20 C.F.R. § 404.1527. Defendant argues that the ALJ reasonably afforded Dr. Grant's opinion less than controlling weight because a treating physician's opinion concerning

Plaintiff's disabled status is an issue reserved for the Commissioner, so it is not entitled to controlling weight or special significance.

24. In this Court's view, substantial evidence supports the ALJ's decision to give Dr. Grant's opinion less than controlling or great weight. The ALJ considered Dr. Grant's opinion, but found that his "dire opinion is not supported by the findings noted." (Tr. at 29.) In particular, the ALJ noted the inconsistency in Dr. Grant's opinion that Plaintiff was totally disabled and his report indicating "normal EMG and nerve conduction tests and relatively mild limitations in the left shoulder." (Tr. at 29.) Given this inconsistency, substantial evidence in the record supports the ALJ's decision to discount Dr. Grant's opinion.

25. Plaintiff's fourth claim is that the ALJ erred when he afforded Dr. Morgante relatively little weight. Dr. Morgante is Plaintiff's chiropractor, who saw Plaintiff twice in 2011 and twice in 2013. (Tr. 430, 432) Dr. Morgante noted that Plaintiff had pain in the neck, head, mid-back, low back, left leg, and left shoulder. (Tr. at 432.) He opined that Plaintiff was incapable of low-stress jobs; had limited ability to move, sit, stand, carry, or reach; and would miss more than four days of work per month. (Tr. 432-35.) Dr. Morgante further opined that Plaintiff was unable to perform competitive, full-time employment. (Tr. 30, 432-36.) The ALJ gave "relatively little weight" to Dr. Morgante because his opinion was not consistent with the objective evidence of record and because chiropractors are not considered acceptable medical sources. (Tr. at 30.)

26. Chiropractors are not "acceptable medical sources," thus their opinions are not entitled to any special weight. 20 C.F.R. § 404.1513. Rather, they are considered "other medical sources," and an ALJ may consider their opinion of the

11

severity of the claimant's impairment and ability to work. Knight v. Astrue, 32 F. Supp. 3d 210, 221 (N.D.N.Y. 2012); see 20 C.F.R. § 404.1513. An ALJ has the discretion to determine the appropriate weight to accord a chiropractor's opinion based on all the evidence before him, but is not required to give the chiropractor controlling weight. Diaz v. Shalala, 59 F.3d 307, 313 (2d Cir. 1995). But a chiropractor's opinion should not be lightly dismissed where it is "completely consistent" with the opinions of other treating physicians. Ilarda v. Chater, No. CIV.A. CV-95-2180 DG, 1996 WL 389366, at *12 (E.D.N.Y. July 8, 1996).

27. Plaintiff argues that the ALJ should have given Dr. Morgante's opinion great weight because it is supported by objective evidence, such as Plaintiff's MRI and EMG in 2003. Plaintiff further argues that although Dr. Morgante is not an acceptable medical source, the ALJ should consider his opinion to evaluate the severity of Plaintiff's impairments and how they affect his ability to work. Plaintiff also argues that the ALJ cannot reject Dr. Morgante's opinion outright solely because he is a chiropractor. See Losquadro v. Astrue, No. 11–CV–1798 (JFB), 2012 WL 4342069, at *1 (E.D.N.Y. Sept. 21, 2012). Defendant argues that the ALJ correctly rejected Dr. Morgante's statements and medical assessments because they are contrary to the record and chiropractors' opinions are not entitled to deference.

28. In this Court's view, substantial evidence supports the ALJ's decision to give relatively little weight to Dr. Morgante's opinion. On February 12, 2013, Dr. Morgante opined that Plaintiff was unable to perform any competitive employment on a full-time basis (even in a low-stress job) because of his limitations: he could only walk one half block; sit or stand five minutes at one time; sit, stand, or walk less than two

hours in an 8-hour day. (Tr. at 30, 433-434.) Dr. Morgante further found that, Plaintiff was unable to look down (sustained flexion) or hold his head in a static position. (Tr. at 434-35.) Dr. Morgante therefore opined that Plaintiff could occasionally turn his head or look up; rarely stoop or climb stairs; and could never twist or climb ladders. (Tr. at 435.) Yet just months earlier, on June 8, 2012, Dr. Joshua Usen, Plaintiff's osteopathic doctor, noted that Plaintiff had full range of motion in his neck and head, (Tr. at 385.) and Dr. Samuel Balderman, a consultative physician who examined Plaintiff on January 5, 2012, noted full flexion, extension, and rotary movement of the cervical spine. (Tr. at 332.) Dr. Balderman also opined that Plaintiff had only a mild limitation bending and lifting due to pain. (Tr. 332.)

29. Dr. Morgante's opinions were thus inconsistent with medical evidence in the record, and the ALJ did not discount them solely because Dr. Morgante is a chiropractor. Rather, the ALJ considered Dr. Morgante's opinion and simply determined that it was inconsistent with portions of the objective evidence of record. (Tr. at 29-30.) Substantial evidence therefore supports the ALJ's decision to discount Dr. Morgante's opinion.

30. Plaintiff's fifth claim is that the ALJ erred when he discounted Dr. Tracy's opinion based on Plaintiff's description of his ability to perform activities of daily living. Dr. Tracy is a pain-treatment specialist, saw Plaintiff from August 2006 through July 2007, and provided him pain evaluations and treatment plans. (Tr. at 1272.) Dr. Tracy noted locations of Plaintiff's pain and tenderness; commented on Plaintiff's range of motion; opined that Plaintiff was unable to return to past work; and opined that Plaintiff had temporary marked disability for other work. (Tr. at 1256-73.) The ALJ determined

13

that Plaintiff's descriptions of having a moderate functional capacity to complete all household tasks without difficulty contradicted Dr. Tracy's opinion. (Tr. at 31.)

31. The ability to perform basic self-care activities "do[es] not by [itself] contradict allegations of disability." McGregor v. Astrue, 993 F. Supp. 2d 130, 142 (N.D.N.Y. 2012) (quoting Woodford v. Apfel, 93 F. Supp. 2d 521, 529 (S.D.N.Y. 2000)). An ALJ's decision will be remanded if the ALJ relies on the plaintiff's performance of basic activities in his home to discount a treating physician's opinion, without explaining the reasons for doing so. Miller v. Colvin, 122 F. Supp. 3d 23, 28, 29-30 (W.D.N.Y. 2015). But an ALJ may consider Plaintiff's daily activities, symptoms, and objective medical evidence together to determine whether a treating physician is credible. Kirkham v. Comm'r of Soc. Sec., No. 6:14-CV-0711 GTS, 2015 WL 3504889, at *9 (N.D.N.Y. June 3, 2015).

32. Plaintiff argues that his ability to perform activities of daily living does not contradict Dr. Tracy's opinion, because the ability to perform basic activities of daily living and house repair work is not indicative of an ability to complete a normal workday or workweek. Plaintiff further argues that the ALJ's decision should be remanded so that his activities of daily living can be properly considered. Defendant argues that the ALJ reasonably found that Plaintiff's admissions to a moderate functional capability to include performing all household tasks without difficulty contradicts Dr. Tracy's opinion that Plaintiff has a marked temporary disability.

33. In this Court's view, substantial evidence supports the ALJ's decision to discount Dr. Tracy's opinion. The ALJ considered Plaintiff's admissions of his daily activities, Dr. Tracy's notes of Plaintiff's symptoms, and the objective medical evidence

14

of record. (Tr. 30-31.) Additionally, the ALJ concluded that Plaintiff's description of his daily activities contradicted Dr. Tracy's opinion of a marked temporary disability after he noted that Dr. Tracy "did not give any specific limitations" of Plaintiff's disability. (Tr. at 29, 31.) Thus, while the ALJ considered Plaintiff's ability to perform basic activities when he determined that it contradicted Dr. Tracy's opinion, he also considered Plaintiff's symptoms and the objective medical record. The ALJ's decision to discount Dr. Tracy's opinion is therefore supported by substantial evidence in the record.

34. Plaintiff's sixth claim is that the ALJ erred when he afforded significant weight to consultative physicians—Dr. Lynch, Dr. Balderman, Dr. Ferrick, and Dr. Santarpia—instead of giving controlling or great weight to Plaintiff's treating physicians. Dr. Lynch was a consultative examiner who examined Plaintiff on September 19, 2005, and opined that he had a mild to moderate mental impairment. (Tr. at 249, 261.) Dr. Balderman performed a consultative medical examination on Plaintiff on January 5, 2012, and noted well-developed muscles and full range of motion in the upper left extremity and symptom magnification. (Tr. at 332.) Dr. Ferrick performed an independent medical examination for worker's compensation for Plaintiff on June 19, 2006, and noted symptom magnification and that Plaintiff's pain was out of proportion with his MRI findings. (Tr. at 1098, 1100.) Dr. Santarpia performed a consultative psychiatric evaluation of Plaintiff on January 5, 2012, and diagnosed depressive disorder, NOS; anxiety disorder, NOS, mild impairment; and opined that the diagnoses were not sufficient to interfere with Plaintiff's ability to function on a daily basis. (Tr. at 326, 329.)

15

35. The ALJ gave Dr. Lynch some weight, because his opinion seemed consistent with the other credible mental evidence. (Tr. at 30.) The ALJ gave significant weight to Dr. Balderman, because his opinion was consistent with his examination and largely consistent with other evidence of record. (Id.) And the ALJ stated that Dr. Ferrick's findings "called into question other examination findings." (Id.) The ALJ gave some weight to Dr. Santarpia, because testimony and other evidence demonstrated that Plaintiff had more significant limitations in social functioning and concentration than what she indicated in her evaluation. (Id.)

36. The Second Circuit has cautioned that "ALJs should not rely heavily on the findings of consultative physicians after a single examination." Selian v. Astrue, 708 F.3d 409, 419 (2d Cir. 2013); see Cruz v. Sullivan, 912 F.2d 8, 13 (2d Cir. 1990). But treating physicians' opinions are not afforded controlling weight where the opinions are not consistent with other substantial evidence in the record, in which case the opinions of consultative examiners may constitute substantial evidence. Diaz v. Shalala, 59 F.3d 307, 315 (2d Cir.1995); Mongeur v. Heckler, 722 F.2d 1033, 1039 (2d Cir. 1983) (citing Miles v. Harris, 645 F.2d 122, 124 (2d Cir. 1981); Petrie v. Astrue, 412 F. App'x 401, 405 (2d Cir. 2011); Cabrero-Gonzalez v. Colvin, No. 13-CV-6184-FPG, 2014 WL 7359027, at *20 (W.D.N.Y. Dec. 23, 2014). Consultative physicians' opinions are "a valid basis for rejecting a treating physician's opinion" where they are part of other substantial evidence that is inconsistent with the treating physician's opinion. Giles v. Colvin, No. 1:14-CV-00684 (MAT), 2017 WL 2533191, at *3 (W.D.N.Y. June 12, 2017).

37. Plaintiff argues that Dr. Lynch, Dr. Balderman, Dr. Ferrick, and Dr. Santarpia should be given little weight because they are not treating providers and were

consultative examiners who each saw Plaintiff only once. (Tr. at 1077-90, 330-34, 1097-1106, 326-29.) Defendant counters that the ALJ properly considered their opinions, particularly because they were largely consistent with the record evidence.

38.     In this Court's view, substantial evidence supports the ALJ's consideration of the consulting physicians' opinions because they were consistent with other opinions in the medical record. Dr. Lynch's opinion that Plaintiff had a mild to moderate mental impairment is consistent with Dr. Tan's GAF scores and objective evaluations. (Tr. at 390-405, 438-39.) Dr. Balderman's opinion that Plaintiff had only mild limitations in bending, lifting, and in the left shoulder (Tr. 332) is consistent with Dr. Usen's assessment of normal spine movement, normal gait, (Tr. at 29, 385, 359) and the light to moderate functional capacity Plaintiff described to Dr. Tracy. (Tr. at 1256-65.) Dr. Balderman's opinion that Plaintiff was magnifying symptoms and had a muscular left extremity (Tr. at 332-33) was consistent with Dr. Ferrick's opinion that Plaintiff was magnifying symptoms (Tr. at 1100, 1104) as well as with Dr. Patterson's opinion of excellent rotator cuff strength (Tr. at 762) and Dr. Usen's opinion of normal strength and tone in the left upper extremity (Tr. at 359), the ALJ did not evaluate Dr. Ferrick's opinion apart from considering that Dr. Ferrick's opinion was consistent with Dr. Balderman's. The ALJ only afforded Dr. Santarpia's opinion some weight, because although Dr. Santarpia believed that Plaintiff's impairments were not sufficient to interfere with his ability to function on a daily basis, the ALJ found that Dr. Santarpia's assessment was inconsistent with the greater limitations found in the medical record, such as Dr. Lynch's opinion and Dr. Tan's GAF scores and objective evaluations. (Tr. at 261, 390-405, 438-39.) The ALJ's decision to afford the opinions of Dr. Lynch, Dr.

17

Baldman, and Dr. Santarpia this respective weight is therefore supported by substantial evidence in the medical record.

39. The treating-physician rule requires that an ALJ give the medical opinion of a claimant's treating physician "controlling weight if it is well supported by medical findings and not inconsistent with other substantial record evidence." <u>Shaw v. Chater</u>, 221 F.3d 126, 134 (2d Cir. 2000). Plaintiff's treating physicians' opinions are inconsistent with substantial record evidence such as their own office notes, Plaintiff's GAF scores, and Plaintiff's comments to Dr. Tracy. The ALJ's decision to discount and not give controlling weight to Plaintiff's treating physicians' opinions is therefore permissible under the governing law.

40. After carefully examining the administrative record, this Court finds that the ALJ's decision in this case is supported by substantial evidence, including the objective medical evidence and medical opinions rendered therefrom. In this Court's view, the ALJ thoroughly examined the record and afforded appropriate weight to all of the medical evidence in rendering his decision that Plaintiff is not disabled within the meaning of the Act. Finding no reversible error in the ALJ's decision, this Court will grant Defendant's Motion for Judgment on the Pleadings and deny Plaintiff's motion seeking the same relief.

IT HEREBY IS ORDERED, that Defendant's Motion for Judgment on the Pleadings (Docket No. 8-1) is GRANTED.

FURTHER, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 6) is DENIED.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.

Dated:	August 7, 2017
	Buffalo, New York

	<u>/s/William M. Skretny</u>
	WILLIAM M. SKRETNY
	United States District Judge